293 So.2d 518 (1974)
Raymond GIUFFRIA
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al.
No. 6159.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
Rehearing Denied May 10, 1974.
Raymond Giuffria, in pro. per.
*519 Albert H. Hanemann, Jr., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, for defendants-appellees.
Before SAMUEL, REDMANN and LEMMON, JJ.
REDMANN, Judge.
Plaintiff appeals from the dismissal on the merits of his demand against the errors and omissions insurer of a lawyer whose failure in an earlier case to file an answer and defend plaintiff permitted judgment against plaintiff by default. The existence and breach of the lawyer's professional duty is admitted. But the trial court opined the breach did not damage plaintiff. We reverse.
Plaintiff bears the burden of proving the fact and extent of damage, i. e., "the amount of loss he has sustained, and the profit of which he has been deprived * * *", C.C. art. 1934. Ordinarily, in order to establish damage and its quantum, plaintiff must show that a proper answer and defense would have resulted in a different judgment in the original suit, either wholly or partly rejecting the original petition's demand.[1]
The original suit was by an electrician for services, material and labor totalling $1,042.40. The work was alleged to have been accepted by our plaintiff and approved by the parish regulatory agency.
Defendant attorney recalled that plaintiff thought that the bill was too high and "that the work wasn't done properly and if I can recall correctly he also stated that some of it wasn't approved."
One electrician testified that the regulatory agency inspection certificate on completion of the job "don't cover that much work * * *. Judging from these bills there should be a lot more than that" (on the inspection certificate).
Plaintiff testified the work was never completed, and, to the extent only that there did exist at trial time obviously incomplete work, another electrician corroborates this point. Plaintiff also testified that the work that was approved by the regulatory agency was not approved until two or three years later, after another electrician actually made connections and supplied a separate meter to an unoccupied part of the building at a cost to plaintiff's lessor of $693.25. (The electrician testified, however, that his work was not corrective work. Plaintiff testified his electrician was to have completed the connections and supplied a separate meter, as part of the division of the existing electrical service into two portions.)
Finally we note complete duplication, in dates and amounts, of labor charges in smaller bills (totalling $140.37) by the labor charges of the principal bill.
In our opinion, had defendant lawyer timely answered and presented this testimony in the original trial, plaintiff could not have been cast for the $140 duplicated bills and would not have been cast for the other $902. The suing electrician bore the burden of proof in the original suit. There is no preponderance of the evidence (as we have it in our record) in favor of that electrician: the preponderance in our case favors our plaintiff. Further explanation by the electrician might have buttressed his case and sustained his burden of proof, but he was not a witness at our trial.
We conclude that, after a showing of sufficient evidence to probably defeat the original demand, a prima facie case is established and the burden of going forward with the evidence shifts to the nowdefendant lawyer to produce evidence to rebut the prima facie case. Thus it was not our plaintiff's but our defendant's obligation *520 to call the original electrician (or other witnesses) to establish that, despite our plaintiff's evidence, the original judgment would not have been different.
Our plaintiff, to the best of our knowledge from this record, suffered a loss of $1,110.83 (including interest and costs) on June 7, 1966 by payment of the default judgment.
Though it scarce deserves discussion, we have considered and reject the suggestion that plaintiff was not damaged by the amount his lessor paid to have connections ultimately made. This is unrelated to plaintiff's damage, which is measured by the amount of his loss because a default judgment was rendered which would not have been rendered against him had defendant lawyer not unfortunately failed to defend him.
The judgment is reversed and there is judgment in favor of plaintiff against both defendants in solido for $1,110.83 with interest from judicial demand (as prayed) and costs.
Reversed and rendered.
NOTES
[1] Our case does not ask whether a defendant, who knew he had little likelihood of defeating a demand but who insisted on defending as a matter of principle, might be entitled to damages assessed on some other basis. See C.C. art. 1934(3): "Where the contract has for its object * * * some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach * * *."